Filed 5/16/23  In re A.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | B318943<br>(Los Angeles County Super. Ct.<br>No. 18CCJP06623A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Y.E. et al.,<br><br>        Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Debra L. Losnick, Judge.  Dismissed in part and affirmed in part.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant Carlos V.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant Y.E.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellants Carlos V. (father) and Y.E. (mother) appeal from the juvenile court's order terminating their parental rights over their two children, Carlos V., Jr., (born Jan. 2015) and D.V. (born Nov. 2016).[1]  Mother purports to appeal from the order terminating her parental rights over her two older children, Andres C., Jr., (born Jun. 2007) and Angel C. (born Aug. 2008).

Both parents allege that the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to comply with their initial inquiry duties under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.)  and related California law with respect to their shared children.

DCFS contends that it fully complied with ICWA with respect to Carlos V., Jr., and D.V.  It also urges us to dismiss the appeal as to Andres C., Jr., and Angel C., as mother makes no claim of error regarding them.

We agree with the latter contention, but find that DCFS and the juvenile court did err by failing to make any attempt to ask four known extended relatives about Carlos V., Jr., and

_____

[1]     Father also appeals from the juvenile court's order denying his petition to reinstate reunification services.

2

D.V.'s potential Indian ancestry. However, under the standard we articulated in *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*), review granted September 21, 2022, S275578, we find that any inquiry errors are not prejudicial. Accordingly, we dismiss the appeal as to Andres C., Jr., and Angel C., and affirm as to Carlos V., Jr., and D.V.

## FACTS AND PROCEDURAL BACKGROUND[2]

On December 7, 2017, DCFS opened an investigation into the family after father and mother reportedly got into a physical altercation.

Neither parent appeared before the juvenile court until a year later. On December 31, 2018, father filed an ICWA-020 form stating that he might have Indian ancestry, and subsequently claimed that his "paternal great-great grandmother" was Apache. He identified his brother (paternal uncle) and sister (paternal aunt) as potential sources of information about his family. On January 2, 2019, mother made her first appearance, filed an ICWA-020 form stating that she had Indian ancestry, and claimed that her grandmother (maternal great-grandmother) was "Apache." The juvenile court ordered DCFS to investigate both parents' claims.

When DCFS followed up with mother, she informed it that maternal great-grandmother had died in January 2017. Mother claimed that maternal great-grandmother was "a registered Apache Indian," but admitted that mother "did not know the actual tribe."

DCFS was able to interview paternal aunt and paternal uncle. Both initially denied having any additional information

---

[2] Because ICWA error is the only issue raised in this appeal, our summary focuses on facts related to ICWA compliance.

3

about their alleged Indian ancestry. Paternal uncle later informed DCFS that father had probably been thinking of a DNA test that had revealed "that [paternal uncle] was 35% Native American," but added that "[t]here was no actual registry" and attributed the DNA result to the family's Mexican heritage.

After gathering all this information disclosures, DCFS mailed ICWA-030 notices to "all Apache nations." The tribes subsequently responded, indicating that the family did not have Apache heritage.

On May 15, 2019, the juvenile court found that it had no reason to know that Carlos V., Jr., and D.V. were Indian children and determined that ICWA did not apply.

On January 9, 2020, the juvenile court terminated father's reunification services, but further permanency proceedings were delayed.[3] On August 31, 2021, father filed a Welfare and Institution Code section 388[4] petition to request reinstatement of his reunification services.

On March 4, 2022, the juvenile court denied father's section 388 petition. Three days later, it held a contested section 366.26 hearing. After hearing argument from mother and father, the court found all four children adoptable and terminated father and mother's parental rights.

---

[3] The juvenile court had previously bypassed reunification services for mother, as her parental rights over her two oldest children (who are not a part of this appeal) had been terminated in a prior proceeding and mother had not made reasonable efforts to treat the problems that led to those children's removal.

[4] All further statutory references are to the Welfare and Institution Code unless otherwise indicated.

4

Mother and father timely appealed.

## DISCUSSION

## I.   ICWA

Father's sole argument on appeal is that both DCFS and the juvenile court failed to satisfy the duty of initial inquiry under ICWA as to his two children with mother, Carlos V., Jr., and D.V.  Mother joins in his arguments.

### A.   *Relevant Law*

"ICWA was enacted to curtail 'the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement' [citation], and 'to promote the stability and security of Indian tribes and families by establishing . . . standards that a state court . . . must follow before removing an Indian child from his or her family' [citations]."[5]  (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 780.)

Under California law enacted to implement ICWA, DCFS and the juvenile court have "three distinct duties . . . in dependency proceedings."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)  The first is the initial duty of inquiry, which DCFS "discharges . . . chiefly by 'asking' family members 'whether the child is, or may be, an Indian child.'  ([§ 224.2], subd. (b).)." (*Ibid.*)  "This includes inquiring of not only the child's parents, but also others, including but not limited to, 'extended family members.'  (*Ibid.*)  For its part, the juvenile court is required, '[a]t the first appearance' in a dependency case, to 'ask each

---

[5]   An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"  (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition].)

participant' 'present' 'whether the participant knows or has reason to know that the child is an Indian child.' ([§ 224.2,] subd. (c).)" (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 780; see also Cal. Rules of Court, rule 5.481(a)(1)-(2).)  The second duty— the duty of further inquiry—is triggered if there is "reason to believe that an Indian child is involved" (§ 224.2, subd. (e)), while the third duty—to notify the relevant tribes—is triggered if there is "reason to know . . . that an Indian child is involved" (§ 224.3, subd. (a)).

Over the past few years, a spate of appellate courts has weighed in on the consequence to orders terminating parental rights when a social services agency fails to conduct the required initial ICWA inquiry, resulting in "a continuum of tests for prejudice stemming from error in following California statutes implementing ICWA." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011; see also *In re Dezi C.*, *supra*, 79 Cal.App.5th at pp. 777– 778.)  Our Division has adopted the following rule:  "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding.  For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*In re Dezi C.*, *supra*, at p. 779.)

### B. *Standard of Review*

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence.  [Citation.]" (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.)  "Where, as here, there is no

6

doubt that the Department's inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly." (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

### C. *Analysis*

This appeal presents two fundamental questions: (1) did DCFS and the juvenile court commit error under ICWA, and (2) if so, was that error prejudicial? We address each of these questions in turn.

#### 1. *Error*

Father and mother argue that DCFS erred by failing to locate and/or interview seven of their known, extended family members about the families' potential Indian heritage—namely, Carlos V., Jr., and D.V.'s paternal great-grandparents, a second paternal aunt, maternal grandparents, maternal great-grandfather, and maternal aunt.[6] DCFS concedes that they did not interview any of these family members, but argues that these omissions do not constitute error under ICWA.

As outlined above, ICWA requires social services agencies to ask a child's available extended family members whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Under ICWA, absent conflicting law or custom of an Indian child's tribe,

---

[6] Father initially identified four additional relatives with whom DCFS failed to inquire, but conceded in his reply brief that those four relatives are either unrelated to his children, deceased, or unavailable.

7

an "'extended family member'" is defined as "the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."[7] (25 U.S.C. § 1903(2); see also *In re Rylei S.* (2022) 81 Cal.App.5th 309, 318.) Accordingly, DCFS was obligated to inquire of four out of seven of the relatives father identifies: the children's maternal grandparents, second paternal aunt, and maternal aunt.

Although a dependency investigator interviewed Carlos V., Jr., and D.V.'s paternal aunt and uncle, nothing in the record, including the jurisdiction/disposition report prepared by DCFS, which summarized its ICWA-inquiry efforts, indicates that DCFS fully satisfied its ICWA obligation by contacting (or attempting to contact) the children's maternal grandparents, second paternal aunt, or maternal aunt, despite having their names, birth dates, and/or telephone numbers. Under the plain language of ICWA and its implementing statutes, these failures were error.

DCFS contends that it effectively cured any inquiry error by sending notices to all Apache tribes based on both parent's attestations of Apache ancestry. It argues that "the point of the inquiry statutes" is "to gather information on whether to send— and if so, to fill out" notices to any affected tribes, and that sending proper notices effectively overwrites any prior inquiry error.

We cannot wholly agree with this proposition, for while "proper notice to Indian tribes is central to effectuating ICWA's purpose," it is equally true that "adequate[ly] investigat[ing] . . . a family member's belief [that] a child may have Indian ancestry is

---

[7] Section 224.1, subdivision (c), adopts this federal definition of "'extended family member.'"

8

essential to ensuring a tribe entitled to ICWA notice will receive it." (*In re T.G.* (2020) 58 Cal.App.5th 275, 289.)  It is possible that inquiring with the children's second paternal aunt or maternal relatives could have revealed that their parents were mistaken about the identity of the tribe with which the family had been affiliated, or that the family had been affiliated with another tribe equally entitled to notice.  Accordingly, sending notice to the tribes first indicated by the parents cannot completely negate the error caused by DCFS's failure to satisfy its duty of initial inquiry.[8]

DCFS appears to imply that sending this matter back to the juvenile court for further ICWA compliance would be fruitless, arguing that granting a remand on this record would "provide zero insight into whether the children are Indian, and instead would needlessly delay permanency."  But the likelihood that further proceedings would yield a different result is a question of prejudice, not of error.  (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 ["Reversal is justified 'only when the court . . . is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error'"]; see also *In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 777 [when evaluating whether an inquiry error was harmless, "we must assess whether it is

---

[8]     Because the duties of initial and further inquiry significantly overlap, including with regard to the duty to interview extended family members regarding suspected Indian ancestry, thorough compliance with the duty of further inquiry arguably negates prior errors of initial inquiry; however, DCFS does not argue that it complied with either of the inquiry duties.

reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly"].)

We now turn to that issue.

2.    *Prejudice*

Applying the "'reason to believe' rule" that we adopted in *Dezi C.*, *supra*, 79 Cal.App.5th at page 779, we conclude that the juvenile court and DCFS's failure to make the requisite inquiries of extended family members was harmless because the record does not suggest a reason to believe that Carlos V., Jr., and D.V. are Indian children within the meaning of ICWA.[9]

Father argues that his and mother's claims to Apache ancestry both provided a reason to believe that the children are Indian children.  However, after DCFS sent notice to "all Apache nations", the tribes confirmed that the family does not have Apache ancestry.  And neither mother nor father made any proffer, either below or on appeal, that their families have any other source of potential Indian heritage.  (See *Dezi C.*, *supra*, 79 Cal.App.5th at pp. 779, fn. 4, 786.)

Our analysis is underscored by ICWA itself, which narrowly defines "Indian child" to include only a child who is herself or whose parent is a current member of a federally recognized Indian tribe.  (§ 224.1, subd. (b).)  We doubt that the extended relatives, if asked, would have been able to provide any different information about whether Carlos V., Jr., and D.V., their mother, or their father were current tribal members of any

_____

[9]    Father encourages us to set aside the "reason to believe" rule and to instead adopt one of the more stringent prejudice tests promulgated by our colleagues in other divisions.  For the reasons set forth in *In re Dezi C.*, *supra*, 79 Cal.App.5th at pages 782–786, we decline to do so.

10

other tribe—particularly in the absence of any contrary suggestion from the parents, either before the juvenile court or on appeal. (See *In re A.C.*, *supra*, 75 Cal.App.5th at p. 1023 (dis. opn. of Crandall, J.) ["Because such basic information is often known or easily discoverable by each respective parent, there is limited utility in remanding such matters for 'extended family member' inquiry"].)

Accordingly, we conclude that "it is reasonably probable that the juvenile court would have made the same ICWA finding" even if it and DCFS had conducted proper initial inquiries with Carlos V., Jr., and D.V.'s extended relatives. (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

## II. Dismissal

As we noted above, mother also purports to appeal from the juvenile court's order terminating her parental rights over her two older children, Andres C., Jr., and Angel C.

However, while mother joins in father's argument regarding her two youngest children, she does not challenge the juvenile court's orders with respect to her older children. "An appealed-from judgment or order is presumed correct. [Citation.] Hence, the appellant must make a challenge. In so doing, [she] must raise claims of reversible error or other defect [citation], and 'present argument and authority on each point made' [citations]. If [she] does not, [she] may, in the court's discretion, be deemed to have abandoned his appeal. [Citation.]" (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Accordingly, we find that mother has abandoned her appeal with respect to Andres C., Jr., and Angel C., and dismiss the appeal as to them.

11

**DISPOSITION**

The appeal is dismissed as to Andres C., Jr., and Angel C. The juvenile court's orders are affirmed as to Carlos V., Jr., and D.V.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT